IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven A. Heck,                          :
                                         :
                    Petitioner           :
                                         :
          v.                             :  No. 1328 C.D. 2020
                                         :  Submitted:  August 6, 2021
Unemployment Compensation                :
Board of Review,                         :
                                         :
                    Respondent           :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                FILED:  September 21, 2021


          Steven A. Heck (Claimant), *pro se*, petitions this Court for review of
the December 8, 2020 order of the Unemployment Compensation (UC) Board of
Review (Board), which affirmed a referee's decision dismissing Claimant's appeal
as untimely under Section 501(e) of the Unemployment Compensation Law (Law).[1]
Upon review, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§821(e).  Section 501(e) of the Law provides:

> (e) Unless the claimant . . . files an appeal with the board, from the
> determination contained in any notice required to be furnished by
> the [Department of Labor and Industry (Department)] . . . within
> fifteen calendar days after such notice . . . was mailed to his last
> known post office address, and applies for a hearing, such

On March 22, 2020, Claimant filed a claim for UC benefits. Certified Record (C.R.) at 3-5. The UC claim record lists two separating employers: MI Windows and Doors (last day worked 2/19/2020), and Klinger Lumber (last day worked 3/23/2020). *Id.* at 4. UC authorities requested information from both Claimant and MI Windows and Doors (Employer). *Id.* at 7. Based on that information, the local service center mailed a notice of determination to Claimant on May 18, 2020, finding that Claimant's last day of work with Employer was February 19, 2020, that he voluntarily quit his job with Employer because he was mistreated, and that while Claimant had a necessitous and compelling reason for quitting, there were alternatives to resolve the situation. Claimant was therefore determined to be ineligible for UC benefits under Section 402(b) of the Law, 43 P.S. §802(b) (relating to voluntary quit). *Id*. at 19-20. The notice stated that June 2, 2020, was the final day to file a timely appeal. *Id.* at 19.

Also, on May 18, 2020, the local service center mailed to Claimant a notice of determination overpayment of benefits (notice of determination of overpayment), indicating that Claimant received $1,220 in UC benefits to which he was not entitled,[2] which resulted in a fault overpayment of benefits under Section 804(a) of the Law, 43 P.S. §874(a).[3] C.R. at 21-22. The notice of determination of

determination of the [D]epartment, with respect to the particular facts set forth in such notice, shall be final and compensation shall be paid or denied in accordance therewith.

[2] The notice of determination of overpayment indicated that Claimant was overpaid for benefits for claim weeks ending March 28, 2020, April 4, 2020, April 11, 2020, April 18, 2020, and April 25, 2020. C.R. at 21.

[3] Section 804(a) of the Law provides, in relevant part:

Any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be

2

overpayment stated that June 2, 2020, was the last day to file a timely appeal. *Id.* at 21. Claimant did not file his appeal of the notices until June 30, 2020, after the statutory appeal period expired. *Id.* at 24-28.

A referee held a hearing via telephone on September 21, 2020, the notice of which informed Claimant that the only issue that would be addressed at the hearing was the timeliness of Claimant's appeal of the notices under Section 501(e) of the Law. C.R. at 34, 48. Claimant, *pro se*, appeared and testified on his own behalf, and Employer's human resources manager appeared for the hearing. Initially, after the referee identified the exhibits from the Board's record, Claimant stated that he filed his claim for benefits based upon his employer, Klinger Lumber, shutting down due to COVID-19 in March and April 2020, to which the referee responded that he was not taking any testimony yet. *Id.* at 52-53. There being no objection by Employer's representative, the referee admitted the exhibits and then asked whether Claimant received the notices of determination on or shortly after May 18, 2020. Claimant responded, "I think so, yeah." *Id.* at 53. Upon questioning by the referee about why he did not file an appeal on or before the appeal deadline, *i.e.*, June 2, 2020, Claimant insisted that he did file an appeal by mail "because it said [that he] filed underneath [Employer]" but he actually "filed it at Klinger Lumber. That is where [he] filed an [a]ppeal." *Id.* at 53-54. Then, when asked why his appeal was not postmarked until June 30, 2020, Claimant responded that he "didn't get it in the mail until then" and that he filed it after the deadline "[b]ecause

---

liable to repay to the [UC] Fund to the credit of the Compensation Account a sum equal to the amount so received by him and interest at the rate determined by the Secretary of Revenue . . . per month or fraction of a month from fifteen (15) days after the Notice of Overpayment was issued until paid.

43 P.S. §874(a).

[he] didn't know what [he] was doing, . . . [he is] only 19[,] and [he] never had to [do] this before." *Id.* at 54. Employer's human resources manager did not testify regarding the timeliness of Claimant's appeal.

Following the hearing, the referee issued a decision on September 23, 2020, concluding that Claimant's appeal was untimely pursuant to Section 501(e) of the Law and dismissing the appeal. C.R. at 57-59. In doing so, the Referee made the following factual findings:

> 1. The UC Service Center issued Notices of Determination to [Claimant] on May 18, 2020 . . . .
>
> 2. [Copies] of the determinations [were] mailed to [Claimant's] last known post office address on the above date.
>
> 3. The Notices of Determination were not returned by the postal authorities as being undeliverable.
>
> 4. The Notices of Determination informed [Claimant] that there were fifteen (15) days from the date of the determinations in which to file an appeal if [Claimant] disagreed with the determinations. The last day on which a valid appeal could be filed from the determinations was June 2, 2020 . . . .
>
> 5. [Claimant] filed his appeal by first-class mail with a postmark of June 30, 2020 (Exhibit 4).
>
> 6. [Claimant's] reason for the late appeal is [that Claimant] contends [that] he did not know [that] he had to file an appeal.
>
> 7. [Claimant] acknowledged receipt of the determinations on or shortly after May 18, 2020.
>
> 8. [Claimant] was not misinformed nor in any way misled regarding the right of appeal or the need to appeal.

4

Referee's 9/23/2020 Decision, C.R. at 57-58. Based on the above, the referee determined that Claimant's appeal was untimely filed and that he did not provide good cause for his late appeal. *Id.* at 59.

Claimant then appealed to the Board, asserting that, "when claiming unemployment for [March 23, 2020, through April 25, 2020, he] was not claiming on MI Window & Doors. . . . [He] was laid off from Klinger Lumber due to the [COVID] shut down." C.R. at 66. He further argued that his appeal from the notices was late because he was not living at the address to which the notices were sent, and, while his parents were getting his mail, they were not opening it. *Id.* He was therefore not aware of the notices. *Id.*

In a decision mailed on December 8, 2020, the Board adopted and incorporated the referee's findings of fact and conclusions of law as its own and affirmed the referee's decision. C.R. at 72-73. The Board noted that, at the hearing before the referee, Claimant did not testify that the post office delivered the notices after the appeal deadline, but he stated instead that he "didn't know what [he] was doing" and was "only 19." *Id*. at 72. The Board concluded that Claimant was not entitled to *nunc pro tunc* relief because the delay in filing his appeal did not involve fraud, administrative breakdown, or non-negligent conduct. *Id*. Moreover, the Board determined that *nunc pro tunc* relief was unavailable to Claimant because he had control over the circumstances that resulted in his late appeal, *i.e.*, he was able to get his mail from his parents or have his mail forwarded to where he was living. *Id*. Claimant then petitioned this Court for review.[4]

---

[4] As this Court has recently explained:

> Generally, this Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported

5

On appeal, Claimant admits that his appeal was untimely and explains that he did not receive the notices "right away due to not talking with [his] family or [his] family [being] able to contact [him]. [His] parents received [his] mail but just held it for [him and] they didn't open it because it wasn't theirs. When returning home, [he] opened [it] right away and got the appeal mailed out right away." Claimant's Brief at 3. He thus admits that he filed his appeal late and that he did not inform the UC authorities that his mailing information was incorrect. *Id.* He repeats his argument that he filed for UC benefits on March 22, 2020, because his employer at that time, Klinger Lumber, closed due to COVID-19 and Governor Wolf's restrictions pertaining thereto, including the shutdown of all lumber yards. *Id.* at 3-4. He explains that he received benefits information and actually began receiving benefits, but later, he received the notices that he was ineligible for benefits. *Id.* He also states: "I know [that] I filed after [the] appeal date[,] but who would have thought [that] I wouldn't be eligible for benefits seeing that all [of the] people [who] were able to apply if their company shut down d[ue] to [the COVID]-19 shutdown." *Id.* at 5.

---

by substantial evidence. 2 Pa. C.S. §704. We may also, however, "[d]isturb[] an agency's adjudication for a capricious disregard of evidence . . . where the factfinder has refused to resolve conflicts in the evidence, has not made essential credibility determinations or has completely ignored overwhelming evidence without comment." "When determining whether the Board capriciously disregarded the evidence, the Court must decide if the Board deliberately disregarded competent evidence that a person of ordinary intelligence could not conceivably have avoided in reaching a particular result, or stated another way, if the Board willfully or deliberately ignored evidence that any reasonable person would have considered to be important."

*Barsky v. Unemployment Compensation Board of Review*, ___ A.3d ___ (Pa. Cmwlth., No. 948 C.D. 2020, filed August 31, 2021), slip op. at 5-6 n.5.

The Board responds that Claimant's appeal was unquestionably untimely, which he does not dispute, and that "Claimant is not entitled to *nunc pro tunc* relief because he was not misled as to the necessity to file an appeal, and he could have taken steps to collect the determinations from his parents' address and file a timely appeal." Board's Brief at 6, 9. Therefore, according to the Board, it correctly concluded that Claimant's appeal to the referee was untimely and that he was not entitled to *nunc pro tunc* relief. Moreover, because it lacked jurisdiction due to the untimeliness of the appeal, the Board cannot address the merits of Claimant's arguments, including whether it listed the correct employer.[5]

Section 501(e) of the Law requires that a claimant appeal a Department determination within 15 days after the notice was mailed to the claimant's last known post office address. 43 P.S. §821(e). We have previously held that the 15-day period "is mandatory and subject to strict application." *Vereb v. Unemployment Compensation Board of Review*, 676 A.2d 1290, 1293 (Pa. Cmwlth. 1996). If an appeal from a Department determination is not filed within the 15-day period, the determination becomes final, and the Board does not have the requisite jurisdiction to consider the merits of the matter. *Id.*

An untimely appeal may be permitted in limited circumstances. *Hessou v. Unemployment Compensation Board of Review*, 942 A.2d 194, 198 (Pa. Cmwlth. 2008). However, a UC claimant bears a heavy burden to justify an untimely appeal.

---

[5] Although we do not reach the merits of either notice of determination based on our disposition in this case, we do note the Board's explanation regarding this issue in its brief that "while Claimant may have had a valid separation from his most recent employment with Klinger Lumber, he failed to earn [6] times his weekly benefit rate in this employment. *See* Section 401(f) of the Law, 43 P.S. §801(f) [(relating to qualifications required to secure compensation)]. . . . Therefore, it was necessary to determine whether his separation from Employer, his next prior employer, was or was not disqualifying under the provisions of Section 402(b) of the Law." Board's Brief at 10.

*Id.* To satisfy his burden of proof, the claimant must establish either that the Department "engaged in fraudulent behavior or manifestly wrongful or negligent conduct" or that "non-negligent conduct beyond [the claimant's] control caused the delay" in filing the appeal. *Id.* Thus, the "[f]ailure to file an appeal within [15] days, without an adequate excuse for the late filing, mandates dismissal of the appeal." *Id.*

In this case, Claimant essentially contends that his late appeal should be excused because the Department, and thereafter the referee and the Board, listed the wrong employer from which Claimant was laid off on various documents in the UC record. We construe Claimant's argument in this regard as an attempt to assert that his appeal was late due to an administrative breakdown and/or non-negligent conduct beyond his control. Claimant also appears to argue that he should not have to pay the overpayment of UC benefits that he received because his company was shut down due to COVID-19, and all other people whose companies shut down for the same reason were able to apply for and receive benefits.

Here, the Board found, and Claimant does not dispute, that the notices of determination were mailed to Claimant's last known post office address in Pillow, Pennsylvania, on May 18, 2020, yet Claimant did not file his appeal until June 30, 2020, nearly a month after the June 2, 2020 appeal deadline. Claimant testified that he filed an untimely appeal, which was postmarked on June 30, 2020, because he did not get the notices in the mail until then and also because he did not know what he was doing. C.R. at 54. However, Claimant did not specifically testify that the post office delivered the notices after the appeal deadline, thus necessitating that he file a late appeal.

Further, as the Board points out, in his appeal to the Board, Claimant asserted that his appeal was late because he did not receive the notices due to not

8

living at his parents' address and, thus, he was not aware of the notices. C.R. at 66, 72. We have previously held that claimants are responsible for receiving their mail. *See Richards v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 327 C.D. 2019, filed October 18, 2019), slip op. at 7 (concluding that a claimant who did not, *inter alia*, check for mail at his previous residence was not entitled to *nunc pro tunc* relief); *see also Johnson v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1220 C.D. 2017, filed April 6, 2018), slip op. at 6 (holding that a claimant who did not receive a determination because she was not living at home or collecting her mail did not have good cause for filing a late appeal because it was her "responsibility to collect her mail in a timely manner, even if she was living elsewhere").[6] Claimant's failure to check his mail at his parents' address and file a timely appeal resulted from circumstances within Claimant's own control and, therefore, his own negligence. Because Claimant failed to establish that the delay in filing his appeal was caused by the Department's fraudulent, wrongful, or negligent conduct, or that his actions were non-negligent such that he would be entitled to *nunc pro tunc* relief, the Board did not err in affirming the referee's decision dismissing Claimant's appeal as untimely.[7] *Hessou*, 942 A.2d at 198.

Accordingly, we affirm the Board's order.

MICHAEL H. WOJCIK, Judge

---

[6] *Richards* and *Johnson* are cited for their persuasive value in accordance with Pa. R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[7] Given our holding that the Board lacked jurisdiction because Claimant's appeal to the referee was untimely, we will not address Claimant's other arguments as to the merits of the notices of determination or whether two appeals should have been filed. *See Vereb*, 676 A.2d at 1295 n.13.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven A. Heck,                          :
                                         :
                    Petitioner           :
                                         :
          v.                             :   No. 1328 C.D. 2020
                                         :
Unemployment Compensation                :
Board of Review,                         :
                                         :
                    Respondent           :


# **O R D E R**


AND NOW, this 21st day of September, 2021, the order of the
Unemployment Compensation Board of Review, dated December 8, 2020, is
AFFIRMED.


                              _____
                              MICHAEL H. WOJCIK, Judge